**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **CLOVER NOLASCO,** | |
| **PLAINTIFF,** | **CIVIL ACTION NO. 1:23-CV-1631** |
| **v.** | |
| **SOLARIS PAPER, INC.,** | |
| **DEFENDANT.** | |

**DEFENDANT SOLARIS PAPER, INC.'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant Solaris Paper, Inc. (Solaris) submits these proposed findings of fact and conclusions of law as follows[1]:

## I.   INTRODUCTION

As a four-year employee at Solaris's office in Virginia with no management experience with the Company, and no bachelor's degree, Plaintiff Clover Nolasco (Ms. Nolasco or Plaintiff) was not the better qualified candidate for the at-issue Senior Procurement Manager (SPM) position on which she bases her failure to promote claim under Title VII of the Civil Rights Act of 1964, as amended (Title VII). The record contains ample documentary and testimony evidence demonstrating that Solaris made the at-issue decision and selected another employee with a bachelor's degree, who happens to be outside of Ms. Nolasco's protected classes (White, American), due to her fourteen-year tenure at Solaris, which included ten years of management experience at its office in California, where the SPM position is based.

---

[1] Defendant will cite to the trial transcript taken on November 12, 2024 as "Tr. With the name of the witness." The trial transcript of Ms. Sheila Chan will be cited as "Chan Tr." Defendant's Exhibits will be cited as "Def. Ex." and Plaintiff's Exhibits will be cited as "Pl. Ex.".

As shown by the testimony elicited and admitted at trial, after notifying Ms. Nolasco of its non-selection decision, Solaris offered her a promotion, which she declined. Ms. Nolasco filed her Complaint against Solaris, asking the Court to conclude that Chief Executive Officer (CEO), David Chin-Bing (Mr. Chin-Bing), made the decision not to promote her, which Vice President of Human Resources (HR) Shelley Farnham (Ms. Farnham) then covered up, due to race and/or national origin-based animus. Nevertheless, Ms. Nolasco cannot point any evidence showing race or national origin discrimination.

## II.     PROPOSED FINDINGS OF FACT

### A.     Description of Solaris Paper, Inc.

1.     Solaris is a towel and tissue manufacturing company headquartered in Moreno Valley, California, with an affiliate, Mercury Paper, headquartered in Strasburg, Virginia. Chan Tr. 9:12-16; Tr. Nolasco 48:21-49:7; Pl.'s Proposed Findings of Fact ¶ 1, ECF No. 52.

### B.     Solaris's Employment Policies

1.     Solaris maintains an Equal Employment Opportunity (EEO) policy that prohibits discrimination based on race and national origin (among other protected classes). Tr. Nolasco 64:17-19, Farnham 145:7-8, 146:6-8, 146:12-147:13, 148:2-19, Chin-Bing 186:7-14; Def. Exs. 13, 18.

2.     Solaris provided training on its EEO policy. Tr. Chin-Bing 186:15-16.

3.     Ms. Nolasco read and received Solaris's EEO policy. Tr. Nolasco 63:1-66:7; Def. Exs. 11, 13, 14.

### C.     Ms. Nolasco's Employment History with Mercury Paper

1.     On September 19, 2018, Ms. Nolasco began her employment with Mercury Paper as a Production Analyst in its Virginia office. Tr. Nolasco 7:8-10, 8:9-11, 17:6-9, 57:14-16, 58:4-6, 58:18-22; Def. Exs. 6, 20; Chan Tr. 55:18-20.

2.      Ms. Nolasco never held the title of supervisor or manager at Mercury Paper.  Tr. Nolasco 67:11-13, 70:16-17, 84:3-5, Farnham 130:12-16.

3.      Within a month of being hired, on October 29, 2018, Ms. Nolasco received a lateral transfer to the position of Buyer in the Procurement Department. Tr. Nolasco 8:15-16, 17:10-19, 18:19-20, 67:24-68:1.

4.      On September 8, 2020, Mercury Paper promoted Ms. Nolasco to Senior Buyer. Pl.'s Proposed Findings of Fact ¶ 4; Tr. Nolasco 19:11-17, 70:23-25; Chan Tr. 16:1-3.

5.      As a Senior Buyer, Ms. Nolasco reported to the Head of Procurement, Sheila Chan (Ms. Chan). Pl.'s Proposed Findings of Fact ¶ 5; Tr. Nolasco 24:15-22, 71:1-3, Chin-Bing 89:20-24.

6.      As the Head of Procurement, Ms. Chan reported to the CEO, Mr. Chin-Bing. Chan Tr. 13:19-23.

7.      Mr. Chin-Bing was the CEO of Solaris from approximately March/April of 2020 to May 31, 2023. Tr. Chin-Bing 87:16-88:1; Chan Tr. 17:5-6.

**D.      Solaris Restructures and Creates the Senior Procurement Manager Position.**

1.      On February 25, 2022, Ms. Chan resigned from the Head of Procurement at Solaris. Pl.'s Proposed Findings of Fact ¶ 12; Chan Tr. 19:20-22; Def. Ex. 23; Tr. Farnham 112:19-20, 113:22-114:1.

2.      After Ms. Chan resigned, Mr. Chin-Bing and Ms. Farnham, who has forty-three years of experience working in HR, discussed whether any changes should be made to the structure of the organization and the Head of Procurement position. Tr. Farnham 114:23-115:13, 144:22-23.

3.      As part of this restructuring process, Mr. Chin-Bing and Ms. Farnham decided the Procurement Department would no longer report directly to the CEO, Mr. Chin-Bing, and instead,

would report directly to Ronald Iswono (Mr. Iswono), the Vice-President of Logistics, Supply Chain, and Procurement. Tr. Farnham 115:16-116:14; Pl. Exs. A, PP.

4.      Moreover, as part of this restructuring process, the SPM position was created and Solaris eliminated the Head of Procurement position. Tr. Chin-Bing 96:2-5, Tr. Farnham 95:23-25, 96:6-8, 116:20-117:25; Chan Tr. 52:1-3, 52:12-14; Pl. Exs. A, PP.

**E.      Ms. Chan Recommends Ms. Nolasco for a Position When She Resigns.**

1.      On March 3, 2022, Ms. Chan emailed Mr. Chin-Bing and Ms. Farnham, recommending Ms. Nolasco for a "Purchasing Manager" position. Pl. Ex. C; Chan Tr. 36:2-21; Tr. Chin-Bing 92:3-15, Farnham 124:9-13, 124:19-24, 157:19-158:3, 158:10-12; Pl.'s Proposed Findings of Fact ¶ 13.

2.      Although Solaris had formal succession plans called individual development plans (IDP), Ms. Chan had not prepared an IDP for Ms. Nolasco to identify Ms. Nolasco as her successor in accordance with Solaris' policies. Tr. Farnham 151:18-152:7, 154:24-155:1.

3.      Ms. Chan wrote that she wanted Ms. Nolasco to be her successor in Ms. Nolasco's 2020 performance review, but it was a recommendation and not a promise of a position. Tr. Nolasco 82:21-83:10, 83:14-23, Farnham 157:9-18; Chan Tr. 54:1-16.

4.      Ms. Nolasco never had an IDP during her employment with Mercury Paper. Tr. Nolasco 83:21-23, Farnham 151:18-152:7, 154:21-155:1, 154:3-6, 155:9-11, 164:17-23.

**F.      Qualifications for the Senior Procurement Manager Position.**

1.      In determining who to select for the SPM position, Mr. Chin-Bing and Ms. Farnham (White, American), looked for a candidate with in-company managerial experience, a bachelor's degree, willing to work in California, tenure with the company, and attention to detail and procurement experience. Pl. Ex. A; Def. Ex. 9; Tr. Farnham 117:18-118:2, 118:20-22, 127:4-15, Chan Tr. 29:18-1.

2.      In-company managerial experience was their number one consideration and a critical skill necessary for the SPM role as the position was a managerial level position. Tr. Farnham 118:20-22, 127:4-15, 159:10-12, Chin-Bing 179:17-18.

3.      Camil Hung (Ms. Hung) had ten years of managerial experience at Solaris prior to being selected for the SPM position. Tr. Farnham 129:21-130:4, 173:5-9, Chin-Bing 184:19-185:4.

4.      In contrast, Ms. Nolasco had never held a managerial position at Mercury Paper. Tr. Nolasco 84:3-5; Chan Tr. 56:8-10.

5.      Ms. Hung had a bachelor's degree. Tr. Chin-Bing 103:1-2, Farnham 129:1-2.

6.      In contrast, Ms. Nolasco's highest level of education is a certificate of Business Operations from Blue Ridge Community and Technical College, which she obtained in 1.5 years. Pl.'s Proposed Findings of Fact ¶ 6; Tr. Nolasco 16:17-17:3, 62:1-5; Chan Tr. 55:16-17.

7.      The SPM position is based out of California. Tr. Farnham 118:16-19.

8.      It was important for the SPM to be in California to interact with the senior management team in California, for example, the Heads of the Supply Chain and the Financial Departments, were in California. Tr. Chin-Bing 103:9-15, Farnham 118:11-119:8; Pl. Ex. F.

9.      Ms. Farnham and Mr. Chin-Bing selected Ms. Hung because of her in-company managerial experience and tenure with Solaris, education, and skills, including her attention to detail, process, and procedure, and compliance with company policies and procedures. Tr. Chin-Bing 102:15-103:15, Farnham 160:1-4, 160:22-161:8, 161:25-162:5

10.      Ms. Hung was also selected due to her product development knowledge. She never missed a deadline and was very organized, and was always very punctual. Tr. Chin-Bing 102:12-15

11. Ms. Hung worked out of Solaris's California office for fourteen years, and would continue to work in-person with her supervisors and other managers in California after her promotion to SPM. Tr. Nolasco 35:1-2, Chin-Bing 102:19--23, 177:10-12, 182:2-10, 184:7-18. Chan Tr. 33:6-10; Def. Ex. 9.; Tr. Farnham 128:8-12, 128:19-22; Pl. Ex. D

12. Andre Soetjahja and Ms. Chan, the former Heads of the Procurement Department, worked in California. Tr. Nolasco 67:20-23, 72:4-10; Chan Tr. 9:20-21, 49:19-24.

13. Ms. Nolasco does not live in California, has never lived in California, and has never applied for a position in California. Tr. Nolasco 36:2-3, 48:10-14, 57:19-21, 62:6-25, 81:13-20; Chan Tr. 12:5-8.

14. In determining who to select for the SPM position, Mr. Chin-Bing and Ms. Farnham reviewed team members in the Procurement Department and found no one in the Procurement Department who was as qualified to fill the position. Tr. Farnham 117:4-17, 118:23-25

15. After reviewing members of the Procurement Department, Mr. Chin-Bing and Ms. Farnham looked at all current managers at Solaris, including Ms. Hung, to see if anyone possessed the skills necessary to be successful in the SPM role. Tr. Farnham 117:14-17, 119:1-8.

16. Ms. Farnham interviewed Ms. Hung for the SPM role, and then shared her conversation with Ms. Hung with Mr. Chin-Bing. Tr. Chin-Bing 101:11-13, 105:17-23, Farnham 119:20-23, 120:2-8, 120:11-15, 159:16-19.

17. Ms. Chan was not involved in deciding who to select for the SPM position. Chan Tr. 52:4-6.

18. Ms. Hung had held several positions that had relevant experience to the SPM role. Specifically, she worked as a Packing Development Specialist in the Product Development Department. She was then promoted to Product Supply Supervisor in September 2009.

Afterwards, Ms. Hung was promoted again to Development Manager in 2012. Later, Ms. Hung was promoted again on August 26, 2017 to Technical and Product Development Manager. Tr. Farnham 133:11-24, Chin-Bing 177:3-8, 182:2-10, 184:7-18; Chan Tr. 33:6-10.

19.    Ms. Nolasco did not have any in-company managerial experience as she had never held a managerial position at Mercury Paper. Chan Tr. 56:8-10, Tr. Nolasco 84:3-5, Farnham 118:13-15.

20.    Mr. Chin-Bing and Ms. Farnham also considered qualifications such as attention to detail, process, and procedure, and compliance with the organization's policies and procedures. Tr. Farnham 118:3-8, Chin-Bing 191:19-192:8.

21.    As Technical and Product Development Manager, Ms. Hung worked very closely with the Procurement Department, along with other managers throughout the organization. Tr. Farnham 119:1-19.

22.    The functions of Ms. Hung's Technical and Product Development Manager role are close to the functions of the SPM role. Tr. Chin-Bing 101:23-102:1.

23.    Ms. Chan never supervised Ms. Hung's performance, had no way to judge Ms. Hung's performance as an employee, and was not well versed with her job responsibilities. Chan Tr. 33:18, 56:2-7.

24.    When discussing the qualifications for the SPM position, Ms. Farnham and Mr. Chin-Bing did not discuss or consider Ms. Hung's race or national origin. Tr. Farnham 139:16-23, 169:16-170:2, Chin-Bing 180:10-16, 190:25-191:18, 193:16-194:7.

**G.    Solaris Selects Ms. Hung for the Senior Procurement Manager Position.**

1.    Ms. Farnham prepared a Manpower Request Form, memorializing Ms. Hung's placement into the SPM position. Tr. Chin-Bing 96:24-97:2, Farnham 120:23-121:1; Pl. Ex. A.

2.     The Manpower Request Form is not a job posting. Tr. Chin-Bing 96:20-97:2, 98:25-99:7.

3.     Consistent with Ms. Farnham and Mr. Chin-Bing's testimonies, the Manpower Request Form states that a bachelor's degree in business is preferred, five "plus years of experience in procurement" is "strongly preferred" with "other related experience considered, management experience" is "required[,]" and "[a]ttention to detail, process, follow-up and documentation" as a "[m]ust-have" competency.  Pl. Ex. A; Tr. Farnham 118:3-8, 122:4-11, 127:16-22, 128:23-129:2, 162:22-163:1.

4.     Although the Manpower Request Form states "[p]rocurement professional certification" as a "[n]ice to have" competency for the SPM position, it was not a necessary qualification. Pl. Ex. A; Tr. Farnham 163:2-11.

5.     Ms. Farnham explained that there are a number of items on the Manpower Request Form that she copied from a prior form and did not delete when completing the form associated with Ms. Hung's SPM position change.  Tr. Farnham 121:12-23, 164:3-12.

6.     After Ms. Hung was selected, Ms. Farnham completed an employee status change request form, memorializing the reasons for Ms. Hung's placement into the SPM position. Pl. Ex. D; Tr. Farnham 132:15-133:10, 164:24-165:3, 165:10-13.

7.     The employee status change request form notes Ms. Hung's strong performance history at Solaris, where she had demonstrated her excellent planning and organizational skills, ability to work well with others, strong problem-solving skills, and extensive technical knowledge of Solaris's products and services. Pl. Ex. D; Tr. Chin-Bing 102:15-103:15, Farnham 160:22-161:8.

8.     Solaris announced its restructuring changes, including but not limited to, Ms. Hung's transition to the newly created SPM position and Mr. Iswono's role as Head of Logistics, Supply Chain, and Procurement, in an internal correspondence to employees on March 7, 2022. Pl. Ex. PP; Tr. Farnham 165:23-166:13.

9.     Ms. Chan is the only witness who alleges that Ms. Nolasco was not selected due to her race and uses a racial slur. Chan Tr. 30:15-32:1; Tr. Nolasco 33:1-3.

10.    Ms. Nolasco never heard any of the decision makers say that she was not selected due to her race or national origin. Tr. Nolasco 85:14-19.

**H.     Solaris Offers Ms. Nolasco Another Promotion Opportunity.**

1.     On March 7, 2022, Ms. Farnham called Ms. Nolasco and explained the reasons for her non-selection, specifically that Ms. Nolasco did not have a bachelor's degree and that SPM position was based in California.  Tr. Nolasco 37:21-38:1.

2.     At this time, Ms. Farnham offered Ms. Nolasco another promotion opportunity in Virginia, specifically to a supervisor position in the Procurement Department, so that she could obtain more managerial experience at Solaris. Tr. Nolasco 40:25-41:2, 84:7-9, Farnham 141:18-23, 142:2-6.

3.     Solaris offered a supervisor position because it wanted to keep her, she was a good employee and it wanted her to continue her career with the Company. *Id*.; Chan Tr. 30:18-21.

4.     Later that day, on March 7, 2022, Ms. Nolasco sent an email to Ms. Farnham and Ms. Chan, declining the supervisor position that Ms. Farnham offered her earlier that day and notifying them of her voluntary resignation. Pl. Ex. F; Tr. Nolasco 39:3-10, 44:1-3.

5.     In response to her March 7th email, Ms. Farnham explained to Ms. Nolasco that, Solaris decided to promote Ms. Hung to SPM because of her "contributions, skills and managerial experience at Solaris" and because the Procurement Department "could use a fresh set of eyes"

and because Ms. Nolasco was not located in California. Pl. Ex. F; Tr. Nolasco 40:15-18, 78:11-22, 79:9-14, 80:12-14, Farnham 167:25-168:8.

6.     Ms. Farnham also provided in her email to Ms. Nolasco that her contributions to the company were valued. Tr. Nolasco 81:10-12; Pl. Ex. F.

7.     Ms. Farnham further clarified in her email to Ms. Nolasco that the SPM role is a "senior manager role, not a manager role" to specify that the expectation is senior manager roles require more managerial experience. Pl. Ex. F; Tr. Farnham 168:9-17.

8.     The supervisor position would have given Ms. Nolasco a ten percent salary increase. Tr. Farnham 168:20-24.

9.     Mr. Chin-Bing supported Ms. Farnham's supervisory promotional offer to Ms. Nolasco. Tr. Farnham 168:25-169:6, Chin-Bing 179:16-18.

10.     Ms. Nolasco declined Ms. Farnham's promotion offer to a supervisory position in the Procurement Department and resigned effective April 8, 2022. Tr. Nolasco 44:14-17, 83:24-84:2; Pl. Ex. F.

**I.     Ms. Nolasco Obtains Employment with a Higher Paying Salary.**

1.     When Ms. Nolasco resigned from Mercury Paper, her base salary was $64,000. Tr. Nolasco 53:3-5.

2.     One month after her resignation, Ms. Nolasco started working at Robotic Research as a Senior Buyer. Tr. Nolasco 53:20-22.

3.     As a Senior Buyer for Robotic Research, Ms. Nolasco made $75,000, which is $11,000 more than her annual salary as a Senior Buyer for Mercury Paper. Tr. Nolasco 53:21-54:2.

4.     After working for approximately one-year, Robotic Research promoted Ms. Nolasco to Supply Chain Manager and her salary increased to $90,000. Tr. Nolasco 54:3-13.

5.	Thereafter, Robotic Research gave Ms. Nolasco a $10,000 raise. Tr. Nolasco 54:14-19.

6.	Ms. Nolasco voluntarily resigned from her employment at Robotic Research, and went to another company. Tr. Nolasco 54:20-55:1.

7.	Ms. Nolasco is now working at Noblis and earning twice as much as she made when she left Defendant – she is earning $136,000 per year. Tr. Nolasco 55:4-7.

8.	When Ms. Hung was promoted to the SPM, her salary was $110,000. Tr. Farnham 137:16-138:9; Pl. Ex. E.

## III.    PROPOSED CONCLUSIONS OF LAW

### A.    Standard of Review

1.	In a non-jury case, the Court must make specific findings of fact and separately state its conclusions of law. Fed. R. Civ. P. 52(a)(1).  The trial judge has the function of finding facts, weighing the evidence, and choosing from among conflicting inferences and conclusions those which she considers most reasonable. *Taylor v. Republic Services, In*c., 968 F. Supp. 2d 768, 775 (E.D. Va. 2013).

### B.    Plaintiff's Title VII Failure to Promote Claim

1.	To prevail on her race and/or national origin-based failure to promote discrimination claims under Title VII, Plaintiff may either produce direct evidence of discrimination or proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994).

2.	If direct evidence does not exist, Plaintiff may proceed under the *McDonnell Douglas* burden-shifting framework by first establishing a *prima facie* case of discriminatory failure to promote. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

3. Once a *prima facie* case is established, the burden then shifts to Solaris "'to articulate some legitimate, nondiscriminatory reason' for the decision not to promote." *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802.

4. Once Solaris meets its burden to show a non-discriminatory justification for its decision, Plaintiff "retains the final burden of persuasion on the issue of intentional discrimination" and has the opportunity to prove that Solaris's "articulated legitimate reasons for promoting [the candidate selected] are mere pretexts." *Carter*, 33 F.3d at 458.

5. Alternatively, under the "mixed-motive" framework, Plaintiff must first offer evidence of discrimination. *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 342 (4th Cir. 2008). Once Plaintiff has made a *prima facie* case, Solaris can avoid liability by providing that it would have made the same decision in the absence of the discriminatory motivation. *Id.*

6. Further, "'if an employer can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor," it can restrict a plaintiff's damages to injunctive and declaratory relief, and attorney's fees and costs.'" *Duvall v. Novant Health, Inc.*, 95 F.4th 778, 788 n.6 (4th Cir. 2024) (quoting *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317 (4th Cir. 2005) (quoting 42 U.S.C. § 2000e-5(g)(2)(B))).

**C.    Plaintiff Has No Direct Evidence of Discrimination**

1. To constitute direct evidence of discrimination, the derogatory comment must "relate[] to the protected class of persons of which the plaintiff is a member." *Bandy v. City of Salem*, 59 F.4th 705, 711 (4th Cir. 2023) (internal quotes omitted).

2. The statement that is allegedly direct evidence of discrimination was made by Ms. Chan, a non-decisionmaker. Chan Tr. 52:4-6. Ms. Chan is the only witness who claims that Ms. Nolasco was not selected due to her race. *Id.* at 30:15-32:1; Tr. Nolasco 33:1-5.

3.      In fact, when Ms. Chan informed Ms. Nolasco that she was not selected for SPM, Ms. Chan used a racial slur towards Asians. Chan Tr. 31:8-14; Tr. Chin-Bing 192:24-193:15.

4.      There is no evidence that Ms. Nolasco was not selected due to her national origin and/or race. Tr. Nolasco 85:14-19.

5.      Here, there is one alleged statement made by a non-decisionmaker, which has not been corroborated by any other witness, that Ms. Nolasco was not selected due to her race. Nevertheless, the overwhelming evidence from documents and witness testimony supports Solaris's legitimate, non-discriminatory reasons for not selecting Ms. Nolasco for the SPM position. *See e.g.,* Pl. Exs. A, D, F; Tr. Chin-Bing 102:19-21, 182:2-10, 184:7-18, Farnham 118:12-119:8, 128:8-22; Def. Ex. 9.

6.      In sum, Ms. Nolasco was not the better qualified for the SPM position. Tr. Farnham 117:4-17, 118:20-25, 125:7-16, 127:4-15, Chin-Bing 179:17-18, 192:19-21. In fact, Solaris offered Ms. Nolasco a supervisor position and encouraged her to stay with the company. Tr. Nolasco 40:25-41:2, 84:7-9, Farnham 141:18-23, 142:2-6; Chan Tr. 30:18-21. Solaris even offered Ms. Nolasco a raise to stay. Tr. Farnham 168:20-24. At best, the alleged statement is inadmissible hearsay. *See e.g., Cherry v. Elizabeth City State Univ.*, 147 F. Supp. 3d 414, 422 (E.D.N.C. 2015) ("Chief Beamon's alleged comment in June 2008 concerning the alleged hearsay statement of Chancellor Gilchrist is not direct evidence of race discrimination concerning [the selected candidate's] April 2011 promotion[.] Even assuming that Chief Beamon made the hearsay comment in June 2008 concerning Chancellor Gilchrist, the hearsay statement is not admissible.") (citing FED. R. CIV. P. 56(c)(4); *FDIC v. Cashion*, 720 F.3d 169, 176 (4th Cir.2013); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)). Even if the statement is

considered by the Court, Ms. Chan is not credible at she was not a decisionmaker. *Id.* She had an ulterior motive of wanting her successor to be promoted as she was resigning.

### D. Solaris Has Established a Non-Discriminatory, Legitimate Business Reasons for Its Promotion Decision

1. To establish a *prima facie* case of discriminatory failure to promote based on race and/or national origin, Plaintiff is required to demonstrate by a preponderance of the evidence that: (a) she is a member of a protected class; (b) she applied to the at-issue SPM position; (c) she was qualified for the position; and (d) Solaris rejected her application under circumstances that give rise to an inference of unlawful discrimination. *Anderson*, 406 F.3d at 268.

2. Once a *prima facie* case is established, Solaris may rebut the *prima facie* case "by demonstrating that the person promoted [instead of the plaintiff] was better qualified" or by presenting another legitimate non-discriminatory reason. *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1130 (4th Cir. 1995).

3. "[I]t is well settled that selection of a more highly qualified applicant is plainly a non-discriminatory reason for rejecting another applicant." *Doyle v. Sentry Ins.*, 877 F. Supp. 1002, 1009-10 (E.D. Va. 1995) (citing *Love v. Alamance County School Bd.*, 757 F.2d 1504, 1507 (4th Cir. 1985)).

4. In other words, if Ms. Hung was better qualified than Ms. Nolasco, then promoting Ms. Hung to SPM on that basis would be a legitimate and non-discriminatory reason. *Moore v. Mukasey*, 305 F. App'x 111, 115 (4th Cir. 2008).

5. When a plaintiff "'asserts job qualifications that are similar or only slightly superior to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer.'" *Cherry*, 147 F. Supp. 3d at 424-25 (quoting *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006)).

6. "Likewise, a plaintiff cannot point to minor discrepancies in an employer's promotion process to rebut the nondiscriminatory reason articulated by the employer; negligence is not discrimination and cannot sustain an action brought under Title VII[.]" *Haywood v. Gutierrez*, No. 1:08CV981 (GBL), 2009 WL 1208111, at *7 (E.D. Va. Apr. 30, 2009), *aff'd sub nom. Haywood v. Locke*, 387 F. App'x 355 (4th Cir. 2010). As such, any attempt by Plaintiff to argue that the Manpower Request Form is inconsistent with the selection criterion testified by the decisionmakers is irrelevant. Tr. Farnham 121:21-22, 162:11-16, 164:3-12.

7. "In selecting an individual to fill a management position, an employer must surely need to consider all characteristics relevant to being a good manager. After all, there is little doubt that some individuals, despite impressive intellectual capacity or analytical ability, are simply not management fodder because they lack the communication and interpersonal skills required to oversee, direct and train a group of subordinate employees in their day-to-day tasks." *Doyle*, 877 F. Supp. at 1009.

8. Here, Solaris has articulated non-discriminatory, legitimate business reasons for its selection decision as there is ample documentary evidence and decisionmaker witness testimony demonstrating that Ms. Hung was the more highly qualified applicant for the position. *Id.; Pletz v. Hayden,* No. 08-0539, 2009 WL 274505, at *4 (E.D. Va. Feb. 4, 2009)("' . . . relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.'") (quoting *Evans*, 80 F.3d at 960), *aff'd sub nom. Pletz v. Panetta*, 376 F. App'x 335 (4th Cir. 2010) .

9. Ms. Hung was selected for the SPM position because of her in-company managerial experience and tenure with Solaris, education, and skills, including her attention to detail, process,

and procedure, and compliance with company policies and procedures. Tr. Chin-Bing 102:15-103:15, Farnham 160:1-4, 160:22-161:8, 161:25-162:5; Pl. Exs. A, C, F; Def. Ex. 9.

10.     To start, Ms. Hung had ten years of managerial experience at Solaris before she was selected for SPM . Tr. Farnham 129:21-130:4, 173:5-9, Chin-Bing 184:19-185:4. In contrast, Ms. Nolasco had never held a managerial position at Mercury Paper and thus, was not considered from the outset. Tr. Nolasco 84:3-5; Chan Tr. 56:8-10; *see also* Tr. Chin-Bing 179:17-18, Farnham 126:22-127:15. The SPM position was a managerial level position. Tr. Farnham 159:10-12.

11.     In addition, Ms. Hung had a bachelor's degree. Tr. Chin-Bing 103:1-2, Farnham 129:1-2. In contrast, Ms. Nolasco does not have a bachelor's degree. Tr. Nolasco 62:1-5; Chan Tr. 55:16-17. Ms. Nolasco's highest level of education is a certificate of Business Operations from Blue Ridge Community and Technical College, which she obtained in 1.5 years. Pl.'s Proposed Findings of Fact ¶ 6; Tr. Nolasco 16:17-17:3.

12.     Moreover, the SPM position is based out of California. Tr. Farnham 118:16-19. Ms. Hung, who is based in California, was selected because Mr. Chin-Bing and Ms. Farnham wanted the SPM position in California so they could interact with the senior management team, most of whom are in California. Tr. Chin-Bing 103:9-15. Ms. Hung worked out of Solaris's California office for fourteen years, and would continue to work in-person with her supervisors and other managers in California after her promotion to SPM. Tr. Nolasco 35:1-2, Chin-Bing 102:22-23, 177:10-12. In contrast, Ms. Nolasco worked in the Strasburg, Virginia office during her tenure with Solaris. Tr. Nolasco 48:10-14, 57:19-21; Chan Tr. 12:5-8. Moreover, Ms. Nolasco does not live in California, has never lived in California, and has never applied for employment in California. Tr. Nolasco 62:6-25, 81:13-20, 85:12-13.

13.     Ms. Hung was also selected for the SPM position because of her product development knowledge. She never missed a deadline and was very organized, and was always very punctual. Tr. Chin-Bing 102:12-15. As Technical and Product Development Manager, Ms. Hung worked very closely with the Procurement Department, along with other managers throughout the organization. Tr. Farnham 119:1-19. The functions of Ms. Hung's Technical and Product Development Manager role are also close to the functions of the SPM role. Tr. Chin-Bing 101:23-102:1.

###     E.     Plaintiff Has Not Met Her Burden

1.     "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006).

2.     "'A plaintiff alleging a failure to promote can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons.'" *Barnes v. Charles Cnty. Pub. Sch.*, 747 F. App'x 115, 118 (4th Cir. 2018) (quoting *Heiko*, 434 F.3d at 259).

3.     "Because the burden of persuasion remains on the plaintiff, the ultimate burden then falls on her to demonstrate that the reason set forth by the employer 'was not the true reason for the employment decision . . . either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence.'" *Doyle*, 877 F. Supp. at 1006 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

4.      An employer's proferred reason is "not pretextual 'unless it is shown both that the reason was false, ***and*** that discrimination was the real reason.'" *Doyle*, 877 F. Supp. at 1006 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 402 (1993)) (emphasis in original).

5.      At the outset, Plaintiff cannot demonstrate that Solaris's reasons for selecting Ms. Hung for the SPM position is false as ample documentary evidence and witness testimony by the relevant decisionmakers exists demonstrating its selection reasons. Tr. Chin-Bing 102:15-103:15, Farnham 160:1-4, 160:22-161:8, 161:25-162:5; Pl. Exs. A, C, F.

6.      In a failure to promote claim, "a plaintiff seeking to rebut an employer's reliance on inferior job qualifications cannot simply compare herself to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination." *Hux*, 451 F.3d at 315 (citing *Anderson*, 406 F.3d at 271 (noting, plaintiff "cannot establish pretext by relying on criteria of her choosing when the employer based its decision on other grounds")).

7.      While a plaintiff may contend that she is more qualified than the selected candidate, courts in the Fourth Circuit "'assess relative job qualifications based on the criteria that the employer has established as relevant to the position in question.'" *Barnes*, 747 F. App'x at 118 (quoting *Heiko*, 434 F.3d at 259) (affirming district court's summary judgment grant on plaintiff's failure to promote claim because even though plaintiff had more experience than the candidate selected, "relevant job experience was only one factor considered by [the defendant/employer]").

8.      Plaintiff "may not choose the areas in which she wants to compete with [the selected candidate] for the promotion; those areas are for the employer's choosing." *Anderson*, 406 F.3d at 270.

9. Although it was not required for the position of SPM, Ms. Nolasco contends that Solaris should have promoted her because she had a certificate in procurement and Ms. Hung did not. Tr. Nolasco 23:1-6; Chan Tr. 18:9-16; *see also Bush v. MAG DS Corp.*, No. 1:18-CV-615, 2020 WL 201044, at *3 (E.D. Va. Jan. 13, 2020) ("The employee must compete based on the qualifications established by the employer . . . . Plaintiff's attempt to establish further qualifications for the role are insufficient to establish pretext.").

10. A plaintiff's "self-assessment of [her] superior aptitude for the position fails to rebut the [employer's] legitimate explanation." *Moore*, 305 F. App'x at 116-17 (citing *Anderson*, 406 F.3d at 269).

11. While in-company managerial experience was Solaris's number one consideration and a critical skill necessary for the SPM role, Ms. Nolasco claims that Solaris's failure to consider her managerial experience prior to her employment with Mercury Paper evinces discriminatory pretext – an argument with which the Fourth Circuit Court of Appeals disagrees. *See e.g., Diamond*, 416 F.3d at 319 ("Assuming *arguendo* that [plaintiff] had more management experience than [the selected candidate] and that [defendant] failed to recognize the extent of [plaintiff's] experience, we are unable to conclude that [plaintiff] has demonstrated pretext. According to the stated qualifications for the accident and health manager position, some prior management experience was 'preferred,' but such experience was not regarded as essential. Thus, while management experience was a factor to be considered in awarding the promotion, it clearly was not intended to be dispositive."). In other words, Ms. Nolasco "cannot establish her own criteria for judging her qualifications for the promotion" but "must compete for the promotion based on the qualifications established by" Solaris, who has proffered ample evidence demonstrating that

in-company managerial experience was their number one consideration. *Anderson*, 406 F.3d at 269; Tr. Farnham 118:20-22, 127:4-15, Chin-Bing 179:17-18, 192:19-21.

12.    Ms. Nolasco's perception of herself is not relevant and courts in the Fourth Circuit "have repeatedly explained that 'it is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (quoting *Evans*, 80 F.3d at 960-61).

13.    Ms. Nolasco's self-serving assessment of her qualifications and that she was more qualified than Ms. Hung for the SPM position is "not enough to carry [her] burden of establishing pretext." *Bush*, 2020 WL 201044, at *3.

14.    Moreover, Ms. Nolasco's assessment of Ms. Hung's performance as SPM does not demonstrate that Solaris's selection reasons were pretext for unlawful discrimination. *See e.g., Plumb v. Potter*, 212 Fed. App'x 472, 481 (6th Cir. 2007)

15.    Similarly, that Ms. Chan (a non-decisionmaker) "may have thought that [Ms. Nolasco] did a good job, or that she did not deserve [the adverse employment action] is close to irrelevant." *DeJarnette*, 133 F.3d at 299 (internal citations omitted). In other words, even though Ms. Nolasco testified that her co-workers were shocked by Solaris's selection decision, such testimony is not relevant to whether Solaris discriminatory failed to promote her. *Id.*

16.    The Court is not a "super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *Tyndall v. Dynaric, Inc.*, 997 F. Supp. 721, 725-26 (E.D. Va. 1998) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997)); *see also Hux*, 451 F.3d at 315 ("Duty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked

with the authority to strip employers of their basic business responsibilities.") (citing *Anderson*, 406 F.3d at 269 and *DeJarnette*, 133 F.3d at 298-99).

17.     "It is not within [the Court's] authority to dictate the factors that employers must weigh in making a promotion" . . . ." *Hux*, 451 F.3d at 318. Here, both decisionmakers testified about the factors they used to make the decision and those factors were sound and legitimate. Tr. Farnham 118:20-22, 127:4-15, Chin-Bing 179:17-18, 192:19-21; Pl. Exs. A, D, F. Indeed, both decisionmakers testified that race and national original was not a factor in their selection decision. Tr. Farnham 169:16-170:2, Chin-Bing 193:16-24.

18.     Solaris "may place more value on any job-related qualification it chooses, so long as it does not discriminate against a protected individual[.]" *Hill v. Augusta County* School Bd., 636 F. Supp. 2d 492, 495 (W.D. Va. 2009) (citing *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992) ("The employer has discretion to choose among equally qualified candidates provided the decision is not based upon unlawful criteria[.]")); *see also Candillo v. N.C. Dep't. of Corrections*, 199 F. Supp. 2d 342, 351 (M.D. N.D. 2002) (finding, "even if Plaintiff's education and experience are objectively superior," an employer may legitimately take into account both objective factors and subjective factors such as interpersonal and leadership skills).

19.     Here, in-company managerial experience was Solaris's number one consideration and a critical skill necessary for the SPM role. Tr. Farnham 118:20-22, 127:4-15, Chin-Bing 179:17-18, 192:19-21. Ms. Nolasco had never held a managerial position at Mercury Paper. Tr. Nolasco 84:3-5; Chan Tr. 56:8-10; *see Hill*, 636 F. Supp. 2d at 495.

20.     Solaris's offer to Ms. Nolasco regarding another promotional opportunity after making its non-selection decision undercuts any effort on her part to demonstrate such discriminatory conduct. *Doyle*, 877 F. Supp. at 1008, n.3. (finding, Plaintiff could not demonstrate

intolerable working conditions to support constructive discharge when offered a promotion after Plaintiff alleged failure to receive a promotion). Here, Solaris offered Ms. Nolasco a promotion to a supervisor position, which she declined. Pl. Ex. F; Tr. Nolasco 39:3-10, 44:1-3.

21. "Proof that the decision-maker is a member of the same protected class as [Plaintiff] 'weakens any possible inference of discrimination.'" *Jackson v. Richmond City Sch. Bd.*, No. 99-CV-642, 2000 WL 34292578, at *7 (E.D. Va. Mar. 15, 2000) (quoting *DeWitt v. Mecklenburg County*, 1999 WL 1102351 (W.D.N.C.) and *Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682, 688 n. 3 (D.N.J. 1996)); *see also Coggins v. Government of D.C.*, 173 F.3d 424, *4 (4th Cir. 1999) ("The fact that both Krull and Gibbons, first and third in Coggins' chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely."). Here, one of the relevant decisionmakers, Ms. Farnham, is within Ms. Nolasco's protected classes, weakening any possible inference of discrimination. *Id.*; Chan Tr. 29:18-19.

22. "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (citing *Gairola v. Commonwealth of Va. Dept. of General Services*, 753 F.2d 1281, 1288 (4th Cir. 1985)). In her March 7th email, Ms. Nolasco claimed she was "passed over for a promotion due to her ethnicity." Pl. Ex. F. Nevertheless, Ms. Nolasco's own assertions are insufficient and she cannot demonstrate that Solaris's selection decision was based on any discriminatory animus.

23. The ultimate burden is on Plaintiff to prove that Defendant's explanation is merely pretextual and that she was rejected for the promotion based on her national origin or race. *Candillo*, 199 F. Supp. 2d at 342.

### F. Race-Based Discrimination and National Origin-Based Discrimination Are Distinct Title VII Claims Based on Different Protected Classes

1.      Race and national origin are "'ideologically distinct'" under Title VII. *Sarraj v. N. Va. Elec., Coop.*, No. 1:22-CV-12, 2022 WL 2820553, at *6 (E.D. Va. July 18, 2022) (citing *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) (finding, "it would not be proper for the Court to re-cast the plaintiff's national origin discrimination claim as a race discrimination claim")); *see id.* ("As many courts recognize, complaints of discrimination based on an 'Iraqi background' do not state a claim for race discrimination."); *see also id.* (dismissing plaintiff's race-based discrimination claim under Title VII because "disparaging remarks about plaintiff's Muslim religion and status as a foreigner cannot support a race discrimination claim").

2.      The Supreme Court previously held that "Title VII's prohibition against 'national-origin' discrimination protects against discrimination in the workplace on the basis of 'where a person was born, or more broadly, the country from which his or her ancestors came.'" *Barnett v. Tech. Intern., Inc.*, 1 F. Supp. 2d 572, 577 (E.D. Va. 1998) (quoting *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 88 (1973)). Here, Plaintiff has not introduced any evidence of Ms. Hung's national origin to support a claim of national origin-based discrimination. Further, Plaintiff has also not presented any evidence of any discrimination due to her national origin.

### G. Plaintiff's Requested Relief

1.      <u>Back Pay</u>

a.      Back pay is "designed to fulfill the 'make whole' purposes of [Title VII]" and "'should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.'" *Taylor*, 968 F. Supp. at 801 (quoting

*Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1273 (4th Cir. 1985) (internal quotes omitted)).

b.      "'[T]he right of a successful Title VII plaintiff to claim back pay is limited in degree by the statutory duty to mitigate employer damages' and a plaintiff 'forfeits [her] right to back pay if [she] refuses a job substantially equivalent to the one [she] was denied.'" *Warren v. Main Indus. Inc.*, No. 4:16-CV-181-RAJ-LRL, 2018 WL 265575, at *1 (E.D. Va. Jan. 2, 2018) (quoting *Brady*, 753 at 1273); *see also* 42 U.S.C. § 2000e-5(g)(1) ("Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."). Here, Ms. Nolasco has mitigated her damages and according to her own testimony, she is currently earning more than her last base salary at Mercury Paper and more than what Ms. Hung earns as SPM. Tr. Nolasco 55:4-7; Pl. Ex. E.

c.      A plaintiff's "voluntary resignation from comparable employment effectively cuts off any claim she has for back pay after that point based on [plaintiff's] failure to mitigate her damages." *Herring v. Thomasville Furniture Indus., Inc.*, No. 4:96-CV-00081, 1999 WL 1937352, at *5 (M.D.N.C. Aug. 31, 1999) (citing *Brady*, 753 F.2d at 1273 ("[W]here [a] discharged Title VII plaintiff subsequently finds similar employment, but then voluntarily quits, back pay should be decreased by the amount he would have earned had he not quit.")); *see also id.* (finding, plaintiff is only entitled to recover back pay from the time defendant terminated her employment to when she found alternative employment).

d.      To calculate a dollar amount for a back pay award, courts in the Fourth Circuit aim to "'make the victims of unlawful discrimination whole' and to restore them 'so far as possible . . . to a position where they would have been were it not for the unlawful discrimination.'"

*Warren*, 2018 WL 265575, at *3 (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975)).

e.    "[A] back pay award should be reduced by any additional income earned during the back period." *Id.* (quoting *Brady*, 753 F.2d at 1273).

f.    In other words, "a court should calculate the amount of any back pay award and reduce it by any amount a plaintiff earns during the back pay period." *Crump v. United States Dep't of Navy*, 205 F. Supp. 3d 730, 746-47 (E.D. Va. 2016).

g.    A plaintiff stops accruing back pay when she refuses an employer's unconditional offer for promotion. *Porter v. Washington Suburban Sanitation Comm'n*, No.: RWT-03-1036, 2008 WL 11509683, at *1 (D. Md. Jan. 15, 2008) (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 228 (1982)).

h.    When a plaintiff rejects an employer's unconditional offer for promotion, she is not entitled to any backpay for the period of time subsequent to her rejection of that offer. *Id.* at *2; *see e.g., Shipley v. Lockheed Aeromod Center Inc.*, 67 F.3d 296, *3 (4th Cir. 1995) (noting, plaintiff's refusal to "return to work would also undermine any claim for damages") (citing *Ford Motor Co.,* 458 U.S. at 219). Here, Ms. Nolasco rejected Solaris's promotion offer to a supervisory position in the Procurement Department and therefore, would not be entitled to any backpay for the period of time subsequent to her rejection of Solaris's offer. Tr. Nolasco 83:24-84:2; Pl. Ex. F.

2.    Compensatory Damages

a.    "The Fourth Circuit has instructed that 'an award of substantial compensatory damages . . . must be proportional to the actual injury incurred . . . [and] [t]he award must focus on the real injury sustained.'" *Taylor*, 968 F. Supp. 2d at 804 (quoting *Piver v. Pender County Bd. of Educ.*, 835 F.3d 1076, 1082 (4th Cir. 1987)).

b.     The Fourth Circuit has also "cautioned that awards of compensatory damages based on emotional distress should be closely examined, particularly when the supporting evidence consists entirely of the plaintiff['s] own statements." *Diaz v. RM Contractor, LLC,* No. 1:21-CV-1192 (LO/JFA), 2022 WL 2980892, at *7 (E.D. Va. June 17, 2022)(citing *Hetzel v. Cnty. of Prince William*, 89 F.3d 169, 171-73 (4th Cir. 1996)), *report and recommendation adopted*, No. 1:21-CV-01192, 2022 WL 2975301 (E.D. Va. July 27, 2022).

c.     A plaintiff's testimony "alone can support an award of compensatory damages for emotional distress." *Taylor*, 968 F. Supp. 2d at 804 (citing *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 546 (4th Cir. 2003) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996))).

d.     "Where a plaintiff's testimony is offered to support damages for emotional distress, such testimony must 'establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated.'" *Id*. (quoting *Bryant*, 333 F.2d at 546-47) (quoting *Price*, 93 F.3d at 1254).

e.     Nevertheless, the testimony "cannot rely on 'conclusory statements that the plaintiff suffered emotional distress' or the mere facts that a constitutional violation occurred or that the plaintiff was wronged." *Id.* (quoting *Bryant*, 333 F.2d at 547) (quoting *Price*, 93 F.3d at 1254); *see also Laporte v. Henderson*, 176 F. Supp. 2d 464, 471 (D. Md. 2001) (noting, "while a plaintiff's testimony alone can support an award of compensatory damages where there has been either employment discrimination or a constitutional violation, conclusory statements by the claimant and, by implication, by any other party indicating the claimant's anger, distress, frustration, or unhappiness, do not constitute the objective evidence required").

f.      Rather, a plaintiff's testimony "must indicate with specificity 'how [her] alleged distress manifested itself.'" *Bland v. Fairfax Cnty.*, No. 1:10-CV-1030(JCC/JFA), 2011 WL 3421568, at *10 (E.D. Va. Aug. 3, 2011) (quoting *Bryant*, 333 F.3d at 547 and *Price*, 93 F.3d at 1254).

g.      In other words, "[c]onclusory statements of emotional distress will be insufficient alone to support a maximum award of compensatory damages." *Diaz*, 2022 WL 2980892, at *7 (citing *Price*, 93 F.3d at 1254).

h.      In the Fourth Circuit, courts consider the following factors when determining whether substantial evidence supports an award of compensatory damages for emotional distress: "(1) the loss of esteem from peers; (2) physical injury resulting from emotional distress; (3) psychological counseling or treatment; (4) loss of income or other pecuniary expense; (5) the degree of emotional distress; (6) the context of the events surrounding it; (7) evidence tending to corroborate the plaintiff's testimony; (8) the connection between the conduct at issue and the distress; (9) medical treatment rendered due to the distress; and (10) mitigating factors." *Taylor*, 968 F. Supp. 2d at 804 (citing *Price*, 93 F.3d at 1254).

i.      A plaintiff's conclusory statements that (a) the defendant issued an announcement reflecting her demotion and reassignment; and (b) she has been unemployed since defendant terminated her employed "cannot support an award of compensatory damages for emotional distress." *Evans v. Larchmont Baptist Church Infant Care Ctr.*, *Inc.*, 956 F. Supp. 2d 695, 709 (E.D. Va. 2013) (declining to award plaintiff compensatory damages for emotional distress).

j.      Similarly, in cases wherein a plaintiff fails to proffer evidence to demonstrate that the defendant's alleged Title VII violations caused a medical condition, "plaintiff has not offered sufficient evidence of causation to support such a claim." *Lima v. MH & WH, LLC*, No. 5:14-CV-

896-FL, 2019 WL 2602142, at *19 (E.D.N.C. Mar. 8, 2019) (granting defendant's summary judgment motion and dismissing plaintiff's claims for damages for loss of physical control, PTSD, paralysis, continuing physical pain, and significant medical expenses).

k.      Moreover, a maximum award of compensatory damages is not awarded in cases wherein the plaintiff has provided "no supporting documentation in the form of medical records, third party affidavits, or any other evidence to support their claims of emotional distress" and has not alleged that "they have experienced severe or chronic distress or that they have required or undergone treatment for their alleged injuries." *Diaz*, 2022 WL 2980892, at *7.

l.      Here, Ms. Nolasco has not presented any evidence demonstrating that she is entitled any emotional distress damages. Other than her self-serving, conclusory testimony, Ms. Nolasco has not presented any evidence demonstrating that she suffered a demonstratable emotional distress, nor has she indicated with specificity as to how her alleged distress manifested itself. Indeed, Ms. Nolasco has not presented any evidence that she suffered from any physical injury resulting from an alleged emotional distress or that she received physiological counseling or treatment or medical treatment, nor has she presented any evidence to corroborate her conclusory testimony.

3.      <u>Punitive Damages</u>

a.      A plaintiff is not entitled to punitive damages when she failed to seek such an award in her complaint. *RitLabs, S.R.L. v. RitLabs, Inc.*, No.: 1:12-CV-215 (AJT/IDD), 2012 WL 6021328, at *7 n.5 (E.D. Va. Nov. 30, 2012) (noting, "the plaintiff did not include a prayer for punitive damages in its Complaint and should not be considered now"); *In re Hackman*, No.: 10-17176-BFK, 2013 WL 343714, at *4 (Bankr. E.D. Va. Jan. 29, 2013) (recommending plaintiffs' request for punitive damages be denied because, *inter alia,* the complaint did not state a claim for

punitive damages against defendant). Here, Ms. Nolasco failed to seek such an award for punitive damages in her Complaint, and therefore cannot seek an award at this time. *See generally* Compl., ECF No. 1

b.　　In Virginia, "'punitive damages may only be recovered where the plaintiff has made an express claim for them in the prayer for relief or ad damnum clause, sufficient to put the defendant on notice that an award of punitive damages is sought apart from, and in addition to, the compensatory damages claimed.'" *Francis v. Woody*, No.: 3:09-CV-325, 2009 WL 1442015, at *12 (E.D. Va. May 22, 2009) (quoting *Harrell v. Woodson*, 233 Va. 117, 122, 353 S.E.2d 770 (1987)) (emphasis in original).

c.　　Punitive damages are an "extraordinary remedy" and are "designed to punish and deter particularly egregious conduct." *Stephens v. South Atlantic Canners, Inc.*, 848 F.2d 484, 489 (4th Cir. 1988) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981)).

d.　　To demonstrate that defendant acted with malice and/or reckless indifference to her Title VII rights, the plaintiff must prove that defendant discriminated against her "'in the face of a perceived risk that its actions will violate federal law.'" *Bryant*, 333 F.3d at 548 (quoting *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535-36 (1999)).

e.　　The terms "malice" or "reckless indifference" "pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535.

f.　　Not only did Ms. Nolasco fail to seek such an award for punitive damages in her Complaint, she also failed to present any evidence that would entitle to her such an "extraordinary remedy." Indeed, Ms. Nolasco has not presented any evidence demonstrating that Solaris acted with malice and/or reckless indifference to her Title VII rights.

Dated: November 26, 2024

Respectfully submitted,

/s/ Yvette V. Gatling
Yvette V. Gatling, Bar No. 92824
ygatling@littler.com
Ashley D. Jones, Bar No. 94347
adjones@littler.com
Tiffany din Fagel Tse, Bar No. 92958
ttse@littler.com
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
Tysons Corner, VA 22102
Telephone:    703.286.3143
Facsimile:    703.842.8211
*Counsel for Defendant Solaris Paper, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2024, a true copy of the foregoing document was served via the Court's CM/ECF system, which will then send a notification of such filing to the following counsel of record:

Joshua Erlich
Katherine Herrmann.
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Suite 700
Arlington, VA 22209
jerlich@erlichlawoffice.com
kherrmann@erlichlawoffice.com

*Counsel for Plaintiff Clover Nolasco*

/s/ Yvette V. Gatling
Yvette V. Gatling
*Counsel for Defendant Solaris Paper, Inc.*